# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO L. CASTILLO MIRANDA, | Case No. 1:26-cv-00644-KES-EPG-HC |
| Petitioners, | FINDINGS AND RECOMMENDATION TO DENY FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | (ECF No. 21) |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of El Salvador who initially entered the United States on March 27, 2013. He was arrested by immigration authorities and detained for about one month. Subsequently, he was released on his own recognizance. Petitioner applied for asylum and withholding of removal and obtained work authorization. The first amended petition ("FAP") alleges that Petitioner has worked and paid taxes in this country for more than a decade, he has complied with all release conditions, and he has not committed any crimes. When Petitioner appeared for an immigration court proceeding on June 2, 2025, Department of Homeland Security ("DHS") officials re-arrested Petitioner without providing him with prior notice or an

1

explanation of the basis for his re-arrest or re-detention. Petitioner was not afforded an opportunity to contest the basis of the revocation of his parole and re-detention, and he has been detained without a bond hearing. On or around November 10, 2025, Petitioner's immigration attorney withdrew from representing him. Despite continuing efforts, Petitioner has been unable to obtain replacement counsel. (ECF No. 21 at 7.[1])

On January 26, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1.) On February 6, 2026, an immigration judge ("IJ") ordered Petitioner removed to El Salvador. Petitioner was not represented by counsel at the removal hearing. The removal order states that Petitioner waived his right to an appeal.[2] Petitioner attempted to file a *pro se* appeal to the Board of Immigration Appeals ("BIA"). It was later returned to him due to a filing error. (ECF No. 21 at 8.)

On February 10, 2026, this Court ordered that "Respondents shall not transfer Petitioner out of this District" pending the Court's decision on the habeas petition. (ECF No. 13 (emphasis deleted).) On February 18, 2026, Respondents transferred Petitioner to Arizona. In the days following, they moved him through several other states before ultimately detaining him in El Paso, Texas. (ECF No. 21 at 8.) On February 25, 2026, the Federal Public Defender moved this Court to reconsider its earlier denial of appointment of counsel in this matter, noting Petitioner's transfer to El Paso in violation of the Court's order. (ECF No. 14.) The Court granted the motion and appointed counsel. (ECF Nos. 15, 16.) At some point after that February 25 filing and before March 3, 2026, Respondents transferred Petitioner back to Golden State Annex. (ECF No. 21 at 8.) Petitioner's appeal deadline to the BIA was March 9, 2026. He was unable to obtain counsel to assist him in filing the appeal.[3]

On March 27, 2026, Petitioner filed a first amended petition ("FAP") challenging his detention on due process grounds. (ECF No. 21.) On April 10, 2026, Respondents filed a response, and Petitioner filed a reply on April 17, 2026. (ECF Nos. 22, 23.)

---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.
[2] The FAP alleges that Petitioner did not knowingly waive that right. (ECF No. 21 at 8.)
[3] The FAP alleges that "[i]n total, Petitioner was in transit or in temporary holding locations for one-quarter to one-half of his 30-day appeal window." (ECF No. 21 at 8.)

## II.

## DISCUSSION

In the FAP, Petitioner asserts that: (1) Petitioner is not a flight risk or danger to the community and therefore his detention is unjustified and unlawful; and (2) Petitioner's re-detention without a pre-deprivation hearing violated due process. (ECF No. 21 at 9–11.) Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a)(2)(A). (ECF No. 22 at 2–4.)

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a

3

protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

However, the instant matter is distinguishable from the above cases because Petitioner is subject to a final order of removal. "[W]hile revocation of Petitioner's parole without a bond or custody hearing may implicate a due process issue . . . relief under due process is unavailable at this time in light of the final order of removal entered against Petitioner." Wakil v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-01098-CDB (HC), 2026 WL 161223, at *4 (E.D. Cal. Jan. 21, 2026).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.' § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)."[4] Id. at 578 (some internal quotation marks omitted). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Id. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2)

---

[4] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)).

those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701. "In Zadvydas, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted).

Petitioner argues that "even if this Court concludes that the 90-day removal period in § 1231(a)(2)(A) supersedes any due process violations that led to the removal order becoming final, this Court should maintain jurisdiction and order that he be released on that expiration date if he has not been deported," citing to Wakil. (ECF No. 23 at 4.) In Wakil, the district court

stated it "will maintain jurisdiction over this action throughout the statutory 90-day removal period and order Respondents to file a report no later than the expiration of that period, *i.e.*, no later than March 30, 2026, updating the Court on Petitioner's status and to showing cause why, if he has not been removed, Petitioner should not be released and subject to a bond hearing prior to any re-detention[.]" Wakil, 2026 WL 161223, at *5. The undersigned recommends denying Petitioner's request because on February 10, 2026, this Court ordered that "Respondents shall not transfer Petitioner out of this District" pending the Court's decision on the habeas petition, and thus, Respondents have been unable to execute Petitioner's removal order during the 90-day removal period due to this Court's no-transfer order. (ECF No. 13 (emphasis deleted).) Further, Petitioner has not "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," as required by Zadvydas. 533 U.S. at 701. However, if "continued detention under § 1231(a)(6) becomes unreasonably prolonged and indefinite, Petitioner may file another habeas petition at that time. At this time, however, Petitioner is not entitled to relief." Inamzhon v. Warden of Golden State Annex, No. 1:25-cv-01059-SKO (HC), 2025 WL 3080525, at *3 (E.D. Cal. Nov. 4, 2025). See also Singh v. Warden, No. 1:26-cv-01242-DAD-JDP, 2026 WL 523191, at *2 (E.D. Cal. Feb. 25, 2026).

**III.**

**RECOMMENDATION**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be denied.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District

Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 2, 2026**                         /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE